1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DWAIN D. MOORE,

11              Petitioner,                No. CIV S-06-0119 GEB GGH P

12         vs.

13   WARDEN CAMPBELL, et al.,

14              Respondents.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for attempted murder

19   (Cal. Penal Code §§ 187, 664), with true findings of premeditation, personal gun use (Cal. Penal

20   Code § 12022.5(a)), and infliction of great bodily injury (Cal. Penal Code § 12022.7(e)).

21              This action is proceeding on the original petition filed January 18, 2006.

22   Petitioner originally raised five claims for relief: 1 ) conviction obtained pursuant to an

23   unconstitutional search and seizure; 2) ineffective assistance of counsel; 3) sentence violates

24   Eighth Amendment; 4) jury instruction error; and 5) trial court improperly denied petitioner's

25   motion for a new trial.

26   \\\\\

1          On March 7, 2006, the court granted petitioner's motion to voluntarily dismiss

2   claim five.  On November 3, 2006, the court dismissed claims one and three.  On April 4, 2007,

3   the court dismissed claim two and ordered respondent to file a response to claim four, i.e. jury

4   instruction error.  On May 4, 2007, respondent filed an answer.  On May 24, 2007, petitioner

5   filed a reply.

6          Because the one jury instruction issue does not require a rendition of the facts, the

7   undersigned will only discuss the instructive issue.  After carefully considering the record, the

8   court recommends that petitioner's claim alleging jury instruction error be denied.

9   II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

10         The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

11  petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

12  138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

13  AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

14  standards of review to be used by a federal habeas court in assessing a state court's adjudication

15  of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

16  (9th Cir. 1997).

17         In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

18  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

19  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

20  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

21  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

22  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

23  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

24  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

25         "Unreasonable application" of established law, on the other hand, applies to

26  mixed questions of law and fact, that is, the application of law to fact where there are no factually

1    on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

2    Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

3    AEDPA standard of review which directs deference to be paid to state court decisions.  While the

4    deference is not blindly automatic, "the most important point is that an *unreasonable* application

5    of federal law is different from an incorrect application of law....[A] federal habeas court may not

6    issue the writ simply because that court concludes in its independent judgment that the relevant

7    state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

8    that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

9    1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

10   objectively unreasonable nature of the state court decision in light of controlling Supreme Court

11   authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

12          The state courts need not have cited to federal authority, or even have indicated

13   awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

14   Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

15   contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

16   unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

17   occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

18   established Supreme Court authority reviewed must be a pronouncement on constitutional

19   principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

20   binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

21          However, where the state courts have not addressed the constitutional issue in

22   dispute in any reasoned opinion, the federal court will independently review the record in

23   adjudication of that issue.  "Independent review of the record is not de novo review of the

24   constitutional issue, but rather, the only method by which we can determine whether a silent state

25   court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

26   2003).

1    Petitioner raised his jury instruction error claim on direct appeal.  The California

2  Court of Appeal issued a reasoned opinion denying this claim.  Respondent's April 6, motion to

3  dismiss, attachment B.  The California Supreme Court summarily denied petitioner's appeal.  Id.,

4  Attachment D.  Accordingly, the court considers whether the denial of the claim by the California

5  Court of Appeal was an unreasonable application of clearly established Supreme Court authority.

6  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state

7  court's summary denial of a claim, the court "looks through" the summary disposition to the last

8  reasoned decision).

9  III.  Discussion

10    Legal Standard

11    A challenge to jury instructions does not generally state a federal constitutional

12  claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v.

13  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the

14  interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475

15  (1981); see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

16  F.2d 1378, 1381 (9th Cir. 1986).  The standard of review for a federal habeas court "is limited to

17  deciding whether a conviction violated the Constitution, laws, or treaties of the United States

18  (citations omitted)."  Estelle v. McGuire, 502 U.S. at 68, 112 S. Ct. at 480.  In order for error in

19  the state trial proceedings to reach the level of a due process violation, the error had to be one

20  involving "fundamental fairness."  Id. at 73, 112 S. Ct. at 482.  The Supreme Court has defined

21  the category of infractions that violate fundamental fairness very narrowly.  Id. at 73, 112 S. Ct.

22  at 482.

23    Analysis

24    Due process "requires the prosecution to prove every element charged in a

25  criminal offense beyond a reasonable doubt."  Gibson v. Ortiz, 387 F.3d 812, 820 (9th Cir. 2004)

26  (citing In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068 (1970)).  "Any jury instruction that

4

Case 2:06-cv-00119-GEB-GGH    Document 31    Filed 08/01/07    Page 5 of 7

'reduce[s] the level of proof necessary for the Government to carry its burden ... is plainly inconsistent with the constitutionally rooted presumption of innocence.' " <u>Gibson</u>, 387 F.3d at 820 (alterations in original) (quoting <u>Cool v. United States,</u> 409 U.S. 100, 104, 93 S. Ct. 354 (1972)).

Petitioner argues that CALJIC 2.51 reduced the burden on the prosecution to prove beyond a reasonable doubt the absence of heat-of-passion sufficient to establish attempted voluntary manslaughter.

The California Court of Appeal denied this claim as follows:

CALJIC 2.51 provides: "Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish the defendant is guilty. Absence of motive may tend to show the defendant is not guilty."

Defendant claims our opinion in <u>People v. Maurer</u> (1995) 32 Cal.App.4th 1121 (<u>Maurer</u>) is dispositive. It is not. In <u>Maurer</u>, we found giving CALJIC No. 2.51 was improper where the defendant was charged with violating section 647.6, misdemeanor child annoyance. (<u>Maurer</u>, <u>supra</u>, 32 Cal.App.4th at pp. 1124-1125, 1127.) Because one of the elements of the crime of child annoyance is that the defendant's conduct was "motivated by an unnatural or abnormal sexual interest in" the child (<u>id.</u> at pp. 1125, 1126-1127), motive is an element of the offense. Consequently, we concluded the jury was erroneously instructed that motive was both an element of the crime and not an element of the crime. (<u>Id.</u> at p. 1127.) Finding the error prejudicial, we reversed the conviction. (<u>Id.</u>. at pp. 1131-1132.)

Defendant argues that although voluntary manslaughter does not include the word "motive," "it is clear that 'motive' is the legal cynosure of the crime of voluntary manslaughter." Thus, he asserts the jury was effectively given contradictory instructions when told motive was not an element of the crime while the burden was on the People to negate heat of passion. We disagree that the jury was misdirected.

"[M]otive is the 'reason a person chooses to commit a crime,' but it is not equivalent to the mental state such as intent' required to commit the crime. [Citation.]." (<u>People v. Cash</u> (2002) 28 Cal.4th 703, 738.) Similarly, in <u>People v. Hillhouse</u> (2002) 27 Cal.4th 469, the court stated, "'Motive, intent, and malice–contrary to [defendant's apparent] assumption–are not separate and disparate mental states. The words are not synonyms. Their separate definitions were accurate and appropriate.' [Citation.] Motive describes the reason a person chooses to commit a crime. The reason, however, is different from a required mental state such as intent or malice." (<u>Id.</u> at p. 504.)

Here the trial court properly defined the mental states for murder and manslaughter to the jury. The court also properly defined the separate and distinct

5

1    concept of motive.  Since the instructions did not use the terms "motive" and
2    "intent" interchangeably, it is not reasonably likely the jury understood the terms
     to be interchangeable.  (People v. Cash, supra, 28 Cal.4th at p. 739.)

3    In reviewing a claim of instructional error, we look at the jury instructions as a
     way to see if the entire charge delivered a correct interpretation of the law.
4    (People v. Hayes (1990) 52 Cal.3d 577, 639.)  We conclude the instructions as a
     whole delivered a correct interpretation of the law, and defendant fails to show
5    any reversible instructional error on the issue of motive.

6    Respondent's April 6, motion to dismiss, attachment B, pp. 8-10.

7            The California Court of Appeal found that no instructional error occurred.  Except

8    in the situation noted, and others like it, where the reason something happened is a mandated part

9    of the crime, the jury need not find motive.  For example, a person who has been domestically

10   abused may have motive to kill the abuser, but the crime of voluntary manslaughter requires that

11   the person have the sufficiently disturbed objective state of mind at the time of the crime, i.e.,

12   heat of passion, regardless of the circumstances which led to that state of mind.  While the

13   motive may well explain to the jury why something happened, and lend credibility to a defense

14   overture for voluntary manslaughter, that is the end of use of motive in such a crime.  The denial

15   of this claim by the California Court of Appeal was not an unreasonable application of clearly

16   established Supreme Court authority.  Accordingly, petitioner's jury instruction error claim

17   should be denied.

18           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's jury instruction

19   error claim be denied and judgment be entered.

20           These findings and recommendations are submitted to the United States District

21   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

22   days after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25   shall be served and filed within ten days after service of the objections.  The parties are advised

26   \\\\\

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/31/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

mo119.hab